FRONTIER FEDERAL SAVINGS AND
LOAN ASSOCIATION,
Appellant/Counter Appellee,

v.

COMMERCIAL BANK, N.A.,
Appellee/Counter Appellant.

No. 72366.

Court of Appeals of Oklahoma,
Division 3.

Dec. 4, 1990.

Rehearing Denied Feb. 19, 1991.

Gordon H. Rowe, III, Oklahoma City, for
appellant/counter appellee.

Edward O. Lee, Paul R. Foster, Oklahoma City, for appellee/counter appellant.

## MEMORANDUM OPINION

HANSEN, Judge:

Appellant Frontier Federal Savings and Loan (Frontier) seeks review of summary judgment granted in favor of Appellee Commercial Bank (Commercial). By counter-petition in error, Commercial appeals trial court's denial of attorney fees. We affirm.

Both parties held promissory notes made by Charles Sherrard (Sherrard). Frontier's note was in the amount of $200,000.00, and Commercial's $31,000.00. To secure repayment of his note to Commercial, Sherrard pledged and delivered to Commercial certain other notes made in his favor. These latter notes (McCown notes) had total face value of $205,000.00. Sherrard was in default on his notes to Frontier and Commercial, and the McCown notes were also in default.

Commercial obtained a judgment against Sherrard. In a separate action, Frontier filed against Sherrard and served a garnishment summons on Commercial. Frontier contends it then advised Commercial the proper way to dispose of the collateral (McCown notes) was to bring suit against the obligors on the notes. Commercial, however, had the notes sold at a Sheriff's Sale, after notice to Frontier. Commercial was the only bidder, purchasing the notes by bidding in a credit of $15,000.00 against its judgment. The trial court confirmed the sale over Frontier's objection. It appears Frontier did not appeal from the confirmation order.

Frontier then brought this third action, arguing it held a "duly perfected second security interest or lien" in the McCown notes by virtue of the garnishment summons on Commercial. Frontier alleged Commercial's disposition of the notes was thus governed by the Oklahoma Commercial Code, specifically, 12A O.S.1981 § 9–101 et seq., and that it was entitled to recover under 12A O.S.1981 § 9–507 for its disposition of the notes in a commercially unreasonable manner and for its bad faith conduct. The trial court granted summary judgment to Commercial. In its initial order, the court found Frontier, being neither a debtor nor a party having a secured interest in the collateral, had no standing under § 9–507. In a subsequent order, the trial court dismissed Frontier's remaining bad faith claim. Finally, the trial court denied Commercial's Motion to Assess Attorney Fees. Commercial argued it was entitled to attorney fees under the authority of 42 O.S.1981 § 176, as the prevailing party in an action to enforce a lien. We hold that the trial court's action in each instance was correct.

Frontier propounds five separate propositions on appeal. However, all are disposed of by resolution of two threshold issues, i.e. whether Frontier could recover under theories of either commercially unreasonable disposition or bad faith.

Part 5, Article 9, Oklahoma Commercial Code, provides the rights and remedies of a "secured party" when the debtor is in default. Generally, Part 5 requires the secured party to act in a "commercially reasonable" manner. Specifically, § 9–507 provides, in relevant part:

> ...the debtor or any person entitled to notification, other than the holder of a subordinate lien that is not a security interest, or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part.

Frontier does not controvert Commercial's contention that Frontier's rights in the collateral are subordinate. Frontier, rather, argues it has standing under § 9–507 as one succeeding to Sherrard's rights as a "debtor" and, additionally, as the holder of a "security interest" in the collateral. We agree with the trial court's findings that Frontier is neither.

In support of its contention that it succeeded to Sherrard's rights as a debtor, Frontier cites 12A O.S.1981 § 9–311, which provides:

...debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, ... garnishment, ...).

■ However, 12A O.S.1981 § 9–105(1)(d) defines "debtor", in those instances where it may be someone other than the one who owes payment, in this way:

> Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the *owner* of the collateral in any provisions of the article dealing with the collateral, ... (emphasis added).

Thus, if Sherrard, the person who owed payment on the note, was not the debtor for purposes of § 9–507, the "debtor" would have to be one who owned the collateral. *In Re Buttram*, 2 B.R. 92 (Bankr.N. D.Okla.1979); *Security Pacific National Bank v. Goodman*, 24 Cal.App.3d 131, 100 Cal.Rptr. 763, 10 U.C.C.Rep.Serv. 529 (1972). While Frontier purports to stand in Sherrard's place with respect to the collateral, it does not suggest, nor do we find, that it became the owner of the McCown notes by virtue of its garnishment proceedings against Commercial. Garnishment proceedings result in a lien on the fund or property garnished. *Butler v. Breckinridge*, 442 P.2d 313 (Okla.1967). A lien transfers no title to the property subject to the lien. 42 O.S.1981 § 10.

■ Similarly, Frontier's lien does not come within the Commercial Code meaning of a "security interest". A security interest cannot attach, or come into existence, without an agreement that it attach. *Morton Booth Co. v. Tiara Furniture, Inc.*, 564 P.2d 210, 213 (Okla.1977). Further, Article 9 applies to *consensual* security interests. See the Uniform Commercial Code Comment to 12A O.S.A.1981 § 9–102. "It follows that Article 9 does not apply to judgment liens, judicial liens, statutory liens and other forms of security that arise by operation of law rather than via agreement of the parties". J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code*, p. 757–58 (1972).

Frontier does not come within the statutory meaning of those classes authorized to proceed by § 9–507. The trial court's finding, as a matter of law, that Frontier had no standing under § 9–507, is correct.

Frontier bases its breach of good faith cause on 12A O.S.1981 § 1–203, which provides:

> Every contract or duty within this Act imposes an obligation of good faith in its performance or enforcement.

■ No contractual relationship exists between Frontier and Commercial. As to duty, we disagree with Frontier's contention that § 1–203 establishes an independent duty upon which a cause of action may be grounded. We find nothing in a plain reading of the section to lead us to that conclusion, nor in the cases cited by Frontier. Frontier cites as its primary authority, *Rigby Corp. v. Boatman's Bank and Trust Company*, 713 S.W.2d 517 (Mo. App.1986). That case is, in fact, inapposite to Frontier's contention. In *Rigby*, the Missouri Court of Appeals expressly held the remedy for breach of the obligation of good faith under § 1–203 is a contract, not a tort, remedy. Frontier's argument that *Liberty National Bank and Trust Company of Oklahoma City v. Acme Tool Division of Rucker Company*, 540 F.2d 1375 (10th Cir.1976), stands for the proposition that Oklahoma recognizes an independent cause of action in tort for breach of the obligation of good faith, is no more convincing. The court in the latter case specifically found claimant had a proper security interest, imposing a duty upon the secured party under § 9–504 to sell collateral in commercially reasonable manner. We find nothing, even inferentially, to support an independent cause of action for breach of the obligation of good faith in the absence of contract or a separate duty under the Oklahoma Commercial Code. We have previously disposed of Frontier's sole contention concerning a separate duty under the Code for commercially reasonable disposition, finding no standing to assert such a right. Further, Frontier has not argued, nor provided authority, that Com-

mercial had some duty to it *outside* the scope of the Code.

The trial court was correct in finding, as a matter of law, that Frontier had failed to establish it had a sustainable cause of action. Finding no standing, we need not address Frontier's allegations relative to whether Commercial's actions were commercially reasonable or in good faith.

■ Commercial appeals from the trial court's order denying attorney fees. Commercial asserts it is entitled to attorney fees as the prevailing party pursuant to 42 O.S.1981 § 176, which states:

> In an action brought to enforce any lien, the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee ...

Commercial contends the parties here were "real adversaries seeking a judicial hearing and determination of their conflicting lien claims", and cites authority for award of attorney fees under those circumstances. In support of its position, Commercial further notes Frontier asserts a claim for alteration of lien priorities. We find this argument unpersuasive.

Frontier's Petition, in its relevant part, prays for "actual and punitive damages for losses incurred as a result of the commercially unreasonable acts of (Commercial)". The purported Frontier claim for alteration of lien priorities, which Commercial relies on, was raised by Frontier in its Response to Commercial's second Motion for Summary Judgment. Frontier's statement there that the trial court had the authority to, and should, alter priorities *if* it found Commercial acted in bad faith, was, at best, an ineffectual attempt by Frontier to amend its Petition. Frontier conceded the priority of Commercial's interest in the collateral, and elected to proceed upon its alleged rights to recover damages as a "security interest" holder under the Oklahoma Commercial Code. The fact that Frontier had no such rights does not change the nature of the action. This is not an action where two lienholders "affirmatively asserted their claims against the other". *General Electric Credit Corp. v. First National Bank,* 475 P.2d 137 (Okla.1970). For Com-

mercial to be entitled to attorney fees, the judgment must have been against a lien claim. *Pierson v. American National Bank of Shawnee,* 325 P.2d 426, 428 (Okla. 1958).

In the absence of abuse of the trial court's discretion to tax attorney fees, and finding the trial court correctly ruled Frontier had no standing, as a matter of law, to bring its action, we AFFIRM.

HUNTER, V.C.J., and GARRETT, P.J., concur.